**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | |
| David F. Gardner, | ) | Case No.: 07-03672-BGC7 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| Andre' M. Toffel, Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | A. P. No.: 09-00122-BGC |
| | ) | |
| Linda Marie Gardner and | ) | |
| Joseph Todd Gardner, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION ON COMPLAINT
TO RECOVER FRAUDULENT TRANSFERS**

The matter before the Court is the <u>Complaint to Recover Fraudulent Transfers</u> filed on June 8, 2009, (A.P. Docket No. 1) by Andre' M. Toffel, as trustee in Bankruptcy Case No. 07-03672-BGC7. After notice, a trial was held on January 19, 2012. Appearing were the plaintiff, Mr. Toffel, as trustee; his attorney Mr. Marvin E. Franklin; one of the defendants Mrs. Linda Marie Gardner; and Mr. David F. Gardner, the debtor.

The matter was submitted on the testimony of Mrs. Gardner, Mr. Gardner, and Mr. Toffel; numerous exhibits admitted into evidence; the pleadings, motions, and briefs filed in the case; the arguments of the parties; the record in this adversary proceeding; and the record in Bankruptcy Case No. 07-03672-BGC7.

After having considered the same, the Court has concluded that the relief requested by Mr. Toffel in his complaint, other than that with respect to the alleged transfer described in Exhibit C of the complaint, is due to be granted.

**I. Findings of Fact**

Through his complaint, the trustee seeks to have certain real estate transfers the debtor Mr. David Gardner made set aside under Alabama law by way of section 544(b) of the Bankruptcy Code, 11 U.S.C. § 544(b), as fraudulent conveyances. These transfers were made before the debtor filed bankruptcy and were made to his wife,

Linda Gardner, and to his son, Joseph Gardner. In addition, with respect to one of those allegedly fraudulent conveyances, the trustee seeks a judgment against Mrs. Gardner for half of the purchase price she received when she subsequently sold some of the property transferred to good faith purchasers.

Chronologically, the transfers the debtor made are intertwined with collection efforts against him. All of them are discussed below.

On June 21, 2004, the debtor transferred to his wife, for no consideration, his undivided ½ interest in the following described unencumbered real property (the "Highland Lake" property), which he and his wife owned jointly:

Lot 31, Block A. according to the survey of Highland Lake Development, First Sector, as platted and filed in plat record Vol 1, Page 33 in the Probate Office of Blount County, Alabama; being situated in Blount County, Alabama.

Plaintiff's Exhibit #1.

Also on June 21, 2004, the debtor transferred to his wife and son Joseph Gardner, also for no consideration, his undivided ½ interest in the following described unencumbered real property located on Simmons Road in Cleveland, Alabama (the "Simmons Road" property), which he and his wife owned jointly:

From the northwest corner of section 16, Township 13, Range 1 West, thence South 0 degree 44' 45" east 665.63 feet to the point of beginning; thence south 89 degrees 07'52" east 100 feet; thence south 0 degree 44' east 230 feet; thence north 89 degrees 08' west 100 feet; thence north 0 degree 44'45" west 230 feet to the point of beginning. Subject to existing rights of way for public roads and utility lines. Mineral and mining rights excepted.

Plaintiff's Exhibit #3.

The net of the transaction was that Mr. Gardner transferred his interest in the "Simmons Road" property to Joseph. Mr. and Mrs. Gardner lived in the "Simmons Road" residence with Joseph for about two years after the transfer.

On August 24, 2004, Mr. Gardner was sued in state circuit court by an entity named "Saturna, Inc." Plaintiff's Exhibit #13.

On January 25, 2005, Saturna, Inc. was awarded a judgment by default in the amount of $95,082.34. Plaintiff's Exhibit #13.

On March 7, 2005, Mr. Gardner received a letter from Regions Bank demanding payment of a deficiency balance in the amount of $2,809.02 resulting from the repossession and sale of three vehicles on February 28, 2005. Plaintiff's Exhibit #25.

On March 29, 2005, Mr. Gardner received a letter from Duncan Gutter & Metal Roofing Company seeking payment of a debt in the amount of $9,520.80. Plaintiff's Exhibit #24.

On June 28, 2005, Mr. Gardner received a letter from Associated Recovery Systems demanding payment of a debt in the amount of $6,317.07. Plaintiff's Exhibit #27.

On June 17, 2005, Mr. Gardner quit claimed a real estate lot to his son Joseph. Plaintiff's Exhibit #4. Mrs. Gardner did not own any interest in that lot. According to her, Joseph paid no consideration for the property. Joseph later sold that lot, not disclosed in the evidence, for $6,000. Neither the lot nor the transfer of that lot was described or addressed in the plaintiff's complaint and the complaint contains no allegations or demands for relief with respect to that transfer or lot. The trustee did not, either during the course of this case, or during the trial of this matter, or subsequent to the conclusion of that trial, amend or seek to amend his complaint to include or address the lot or the transfer of that lot. Consequently, no basis exists for granting the trustee any relief with respect to that transfer and none may be granted.

On July 5, 2005, Mr. Gardner transferred to his wife, also for no consideration, his ½ interest in the following described unencumbered real property (the "Highway 75" property), which he owned, prior to the transfer, jointly with his brother Gary Gardner:

> Part of the S ½ of the SE 1/4 of Section 20, Township 12 South, Range 2 East, Blount County, Alabama, more particularly described as follows: From the NE corner of the NW 1/4 of the SE 1/4 of said Section 20; thence S 2°04'20" E, a distance of 1620.39 feet; thence S 46°39' W, 91.45 feet to a pipe, the point of beginning; thence continue S 46°39' W 195.0 feet; thence S 43°21' E 209.0 feet, to northwest right-of-way line of Alabama Highway No. 75; thence N 46°39' E, along said right-of-way 195.0 feet; thence N 43°21' W 209.0 feet to the point of beginning. Above described tract contains 0.94 acres, more or less and is subject to existing utility easements, reservations and restrictions of record.

Plaintiff's Exhibit #5.

Also on July 5, 2005, Mr. Gardner transferred to his wife, also for no consideration, his ½ interest in the following described unencumbered real property (the "Champion Road" property), which he owned, prior to the transfer, jointly with his brother Gary Gardner:

Case 09-00122-BGC    Doc 80    Filed 09/28/12    Entered 09/28/12 13:20:09    Desc Main
Document    Page 3 of 11

A part of the NE 1/4 of the NW 1/4 of Section 4, Township 13 South, Range 2 East, more particularly described as follows: From the NE corner of said NE 1/4 of the NW 1/4 proceed S 59.34'14" W 987.84 feet for the point of beginning; thence proceed N 36° 06' 35" W 200 feet to the South boundary of Champion Road; thence proceed S 53°53'25" W 200 feet; thence proceed S 36° 06'35" E 200 feet; thence proceed N 53°53'25" E 200 feet to the point of beginning. Containing in the aggregate 0.92 acres more or less.

Plaintiff's Exhibit #6.

Also on July 5, 2005, Mr. Gardner transferred to his wife, also for no consideration, his ½ interest in the following described unencumbered real property (the "Wildwood Street" property), which he owned, prior to the transfer, jointly with his brother Gary Gardner:

A part of the NW 1/4 of the SW 1/4 of Section 32, Township 12 South, Range 2 East, Blount County, Alabama, more particularly described as follows: From the SW corner of said NW 1/4 of SW 1/4; thence North 0°58'04" East, along section line, 419.67 feet; thence South 89°56'23" East, 25.0 feet to a 1" pipe on the east R.O.W. of Wildwood Street; thence continue South 89°56'23" East, 494.18 feet to a 3/4" pipe and point of beginning: thence continue South 89°56'23" East, 381.00 feet to a 1" pipe; thence South 1°01'12" East, 392.17 feet to a 3/4" pipe on the North R.O.W. of Underwood Street; thence along North R.O.W. of Underwood Street South 89°53'42" West, 381.00 feet to a spike set in pavement; thence North 1°00'56" West, 393.26 feet to the point of beginning. Containing 3.43 acres, more or less.

Plaintiff's Exhibit #7.

Mrs. Gardner was asked by trustee's counsel to identify Plaintiff's Exhibit #8. She said it was a document evincing a transfer by her and Mr. Gardner of their interest in an unencumbered parcel of property on Underwood Avenue in Oneonta, Alabama (the "Underwood Avenue" property) to her and Joseph for no consideration. She did not say when the transfer occurred. Mr. Gardner's brother Gary and another man, Mitchell Stevens, also owned partial interests in the property which were unaffected by the transfer. However, the exhibit numbered 8 that was offered and admitted into evidence by the trustee's attorney is a duplicate of Plaintiff's Exhibit #3 and, therefore, does not constitute any such evidence of the transfer described by Mrs. Gardner. Plaintiff's Exhibit #8. And without salient evidence surrounding the circumstances of that transaction, including, but not necessarily limited to, a description of the property and when it was made, the Court is unable to conclude whether it is avoidable or not.

4

On September 9, 2005, a lawsuit was filed against Mr. Gardner in state circuit court by Saleem Naviwala.  Plaintiff's Exhibit #17.

On November 21, 2005, Susan Appel filed suit against Mr. Gardner in state circuit court.  Plaintiff's Exhibit #19.

On December 7, 2005, Medical Center Blount filed suit against Mr. Gardner in state circuit court.  Plaintiff's Exhibit #15.

On December 22, 2005, a judgment by default in the amount of $17,797.88 was entered against Mr. Gardner in the state court action filed by Saleem Naviwala. Plaintiff's Exhibit #16.

On January 18, 2006, a judgment by default in the amount of $2,511.25 was entered against Mr. Gardner in the state court action filed by Medical Center Blount. Plaintiff's Exhibit #14.

On February 1, 2006, a judgment by default in the amount of $75,000 was entered against Mr. Gardner in the state court action filed by Susan Appel.  Plaintiff's Exhibit #18.

On February 23, 2006, the Gardners lost a parcel of property located at 2163 County Highway 13 in Cleveland, Alabama to foreclosure.  Plaintiff's Exhibit #10.

On March 6, 2006, Mrs. Gardner sold the "Highland Lakes" property for $43,500. Plaintiff's Exhibit #2.  She said that she and Mr. Gardner used the money to purchase the mobile home where they presently live for $9,821.61 (Plaintiff's Exhibit #9) and to make improvements to the mobile home such as adding carpet, siding, and a new metal roof.  Mr. Gardner confirmed that he and Mrs. Gardner spent a lot of money buying the mobile home and fixing it up so they could live in it.  Whatever was left after, he and Mrs. Gardner used in part for living expenses, and he gambled away the other part.

On March 16, 2006, Mrs. Gardner and Joseph took out a $60,000 mortgage on the "Simmons Road" property.  Plaintiff's Exhibit #11.  Mrs. Gardner testified that she cannot recall what happened to that money.  Mr. Gardner testified that the money was used primarily to make improvements on the house located on the property so their son Joseph could live in it, such as a tin roof, a screened in back porch, and hardwood floors.  Whatever was left after, he and Mrs. Gardner used in part for living expenses, and he gambled away the other part.

On August 17, 2007, Mr. Gardner filed the present Chapter 7 bankruptcy case.

On June 8, 2009, the trustee filed the present adversary proceeding.

Mr. Gardner testified that he cannot read or write and has no education. He once had a very successful general contracting business with a seven million dollar line of credit with multiple local banks and a perfect credit rating. His testimony did not explain when the business began to fail. He did say that he did not have credit problems until "the one lawsuit," although it is not evident which lawsuit he was talking about. He said that someone filed a lawsuit against him demanding millions of dollars which caused the banks to freeze his credit. The suit, according to him, was filed by someone he built a house for who unplugged a sump pump in their basement causing it to flood. He testified that his attorney in that case told him that other attorneys would probably file similar suits against him. And he testified that his attorney told him that he had the right to transfer his property out of his name, and that his attorney advised him to transfer all of his property to his wife and children, which is what he did.

Mr. Gardner said that he did not make any of the property transfers which the trustee seeks to avoid for the purpose of avoiding payment of his creditors, or to hide anything, or with the intent to file bankruptcy. In fact, he took ninety plus thousand dollars out of his and Mrs. Gardner's Individual Retirement Accounts and put it into his business in an effort to revive it, to no avail. He said he tried to pay his creditors. He gave some his motorcycles in payment, but that he simply owed too much. He said that he and his wife do not have anything of value and currently live off social security and what little he earns from side jobs. He said that when his financial circumstances went awry he developed a gambling addiction which resulted in his losing a lot of money. With respect to whatever remained of the proceeds from Linda's sale of the "Highland Lakes" property and mortgage of the "Simmons Road" property after they bought the mobile home and made the improvements to the residences on those properties, he said that he and Mrs. Gardner lived off part of it and that he gambled away "quite a bit" of it.

## II. Applicable Law

To prevail in a state law fraudulent conveyance lawsuit brought pursuant to 11 U.S.C. § 544(b)(1), the trustee must accompany, or be able to stand in the shoes of, an actual unsecured creditor who holds an allowable claim against the debtor, and may only avoid a transfer to the extent state law would permit that unsecured creditor to avoid the transfer. "[T]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title." 11 U.S.C. § 544(b)(1). Under 11 U.S.C. § 544(a), however, the trustee is granted the status of a hypothetical judgment lien creditor, or execution creditor, or good faith purchaser, as of the date the bankruptcy case is filed and may avoid transfers that would be avoidable by any such entities. In either event, his avoidance activities are constrained by the limitations of the state law procedures he employs to avoid a transfer.

6

Code of Ala. 1975, § 8-9A-4 (a) provides that, regardless of when a creditor's claim arose, "a transfer made by a debtor is fraudulent as to a creditor... if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor." Id.  In determining whether a transfer was made with actual intent to hinder, delay, or defraud any creditor, the following factors may be considered: (1) whether the transfer was to an insider; (2) whether the debtor retained possession or control of the property transferred after the transfer; (3) whether the transfer was disclosed or concealed; (4) whether before the transfer was made the debtor had been sued or threatened with suit; (5) whether the transfer was of substantially all the debtor's assets; (6) whether the debtor absconded; (7) whether the debtor removed or concealed assets; (8) whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred; (9) whether the debtor was insolvent or became insolvent shortly after the transfer was made; (10) whether the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) whether the debtor transferred the essential assets of his business to a lienor who transferred the assets to an insider of the debtor.  Code of Ala. 1975, § 8-9A-4(b).  A claim for relief with respect to a fraudulent transfer of real property under section 8-9A-4(a) is extinguished unless brought within 10 years after the transfer was made.  Code of Ala. 1975, § 8-9A-9(1).

Code of Ala. 1975, § 8-9A-4(c) provides that, regardless of when a creditor's claim arose, a transfer is "fraudulent as to a creditor... if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor: (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (2) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due." Id.  A cause of action with respect to a fraudulent transfer under section 8-9A-4(c) is extinguished unless instituted within four years after the transfer by a creditor whose claim arose before the transfer was made and within one year after the transfer was made when the action is brought by a creditor whose claim arose after the transfer was made.  Code of Ala., 1975, §§ 8-9A-9(3), (4).

Code of Ala. 1975, § 8-9A-5(a) provides, "A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer." Id.  A claim for relief with respect to a fraudulent transfer under section 8-9A-5(a) is extinguished unless brought within four years after the transfer was made.  Code of Ala. 1975, §§ 8-9A-9(3).

Code of Ala. 1975, § 8-9A-5(b) provides, "A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt and the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was

7

insolvent." Id. A claim for relief with respect to a fraudulent transfer under section 8-9A-5(b) is extinguished unless brought within one year after the transfer was made. Code of Ala. 1975, §§ 8-9A-9(5).

If a transfer is avoidable, the remedies available to a creditor include: (1) avoidance of the transfer to the extent necessary to satisfy the creditor's claim, Code of Ala. 1975, § 8-9A-7(a)(1); (2) an attachment or other provisional remedy against the asset transferred or other property of the transferee, Code of Ala. 1975, § 8-9A-7(a)(2); (3) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property, Code of Ala. 1975, § 8-9A-7(a)(3)(a); (4) the appointment of a receiver to take charge of the asset transferred or of other property of the transferee, Code of Ala. 1975, § 8-9A-7(a)(3)(b); or (5) "[a]ny other relief the circumstances may require," Code of Ala. 1975, § 8-9A-7(a)(3)(c).

If the property has been transferred to a good faith transferee it is not avoidable pursuant to Code of Ala.1975, § 8-9A-4(a). Code of Ala. 1975, § 8-9A-8(a). If a transfer is voidable, "the creditor may recover judgment for the value of the asset transferred... or the amount necessary to satisfy the creditor's claim, whichever is less, or judgment for conveyance of the asset transferred." Code of Ala. 1975, § 8-9A-8(b). Value, for purposes of the judgment, must be determined as of the date of the transfer. Code of Ala. 1975, § 8-9A-8(c). To the extent of value given, a good faith transferee is entitled to a lien on the property, or the right to retain an interest in the property, or a reduction in the amount of any judgment awarded. Code of Ala. 1975, § 8-9A-8(d).

## III. Conclusions of Law

To recap, the evidence reflects that Mr. Gardner made the following 5 transfers of unencumbered real property to insiders, those being his wife and son, for no consideration, within three years or so before filing bankruptcy:

1. His ½ interest in the "Highland Lakes" property on June 21, 2004, to Mrs. Gardner.
2. His ½ interest in the "Simmons Road" property on June 21, 2004, to Joseph Gardner.
3. His ½ interest in the "Highway 75" property on July 5, 2005, to Mrs. Gardner.
4. His ½ interest in the "Champion Road" property on July 5, 2005, to Mrs. Gardner.
5. His ½ interest in the "Wildwood Street" property on July 5, 2005, to Mrs. Gardner.

The following collection activities were taken against Mr. Gardner during that same period:

8

1. The lawsuit by "Saturna, Inc." on August 24, 2004, resulting in a $95,082.34 judgment on January 25, 2005.
2. Repossession of three vehicles on February 28, 2005.
3. March 7, 2005 letter from Regions demanding deficiency balance of $2,809.02.
4. March 29, 2005 letter from Duncan Gutter seeking payment of $9,520.80.
5. June 28, 2005, letter from Associated Recovery Systems demanding payment of $6,317.07.
6. September 9, 2005, lawsuit filed by Saleem Naviwala resulting in the December 22, 2005, judgment for $17,797.88.
7. November 21, 2005, lawsuit filed by Susan Appel resulting in the February 1, 2006, judgment for $75,000.
8. December 7, 2005, lawsuit filed by Medical Center Blount resulting in the January 18, 2006, judgment for $2,511.25.
9. February 23, 2006, foreclosure of property located at 2163 County Highway 13 in Cleveland, Alabama.

"[I]t is well settled that fraud may arise as an inference of law, and that, where a conveyance is made under such circumstances that the result must necessarily be to hinder and delay existing creditors, it will be presumed that such was the intent of the grantor in making it." Virginia Carolina Chemical Corporation v. Satsuma Orange & Pecan Groves Co., 227 Ala. 55, 148 So. 853, 855 (Ala. 1933). The necessary consequences of the transfers made by Mr. Gardner were to hinder and delay his creditors from collecting the money owed them from the properties that he transferred. It must be presumed, therefore, that his intent in making those transfers was to prevent his creditors from getting those properties.

In fact, Mr. Gardner admitted that his intent in making those transfers, albeit purportedly on the advice of counsel, was to prevent his creditors from collecting their debts from the properties transferred. And it is apparent that based on his attorney's alleged advice, Mr. Gardner believed that he was legally justified in making the transfers. Granted, the circumstances with respect to when he received that advice and specifically formulated his intent to transfer the properties to his wife and son are not entirely clear. Mr. Gardner testified that during the lawsuit involving the sump pump in which he had been sued for millions of dollars, and after an arbitration had been conducted, his attorney told him he could transfer every property he owned to his wife and children and should to prevent his creditors from collecting against those properties. Mr. Gardner testified that in accordance with those alleged instructions, he did just that. Interestingly, none of the records of the lawsuits filed against Mr. Gardner that were admitted as evidence in this case reflect any arbitration. All resulted in default judgments because of Mr. Gardner's failure to appear and defend. Furthermore, it cannot be determined from any of those records whether or not any of the lawsuits involved a sump pump. Moreover, the record reflects only one lawsuit filed before July 5, 2005, the date Mr. Gardner made the last three of the five transfers now assailed by the trustee. That lawsuit was the one filed by "Saturna, Inc." on August 24,

9

2004, which resulted in a $95,082.34 judgment on January 25, 2005. Obviously, the alleged advice obtained and acted on by Mr. Gardner had to have been received prior to July 5, 2005, since he testified that he acted on that advice in making the transfers. So if that advice was given during the course of a lawsuit, the Saturna lawsuit is the only possible candidate even though he did not exclude the two June 21, 2004, transfers from his admission that he made all of the transfers for the purpose of shielding his properties from creditors. But despite the anomalies in Mr. Gardner's testimony, and regardless of precisely when and under what circumstances he purportedly received the alleged advice from his attorney, one thing is very clear, he intended, by his own admission, to transfer his properties to his wife and son for no consideration for to avoid losing them to his creditors.

In addition to his presumed intent to place his properties out of the reach of his creditors, (based on the necessary result of those transfers), plus his admitted intent to transfer those properties in order to put them out of reach of his creditors, other facts compel the conclusion that Mr. Gardner made the assailed transfers "with actual intent to hinder, delay, or defraud" his creditors. The transfers were all made to insiders. No consideration was paid by either of those insiders for any of those transfers. He made the first two transfers on the eve of a significant lawsuit being filed against him. That resulted in a significant judgment against him by default, thus indicating that he owed it without question. Plus, he continued to live in the "Simmons Road" property for two years after he transferred his interest in it. The final three transfers were made six months after that $95,082.34 judgment had been rendered, and after several cars had been repossessed, and after Mr. Gardner had received threatening letters by unpaid creditors, and within six months of three other lawsuits being filed which ultimately resulted in default judgments against him totaling about $95,000.

Furthermore, even though the record does not establish precisely when Mr. Gardner's financial problems began, it is evident that his business failed at some point, and that eventually his efforts to rehabilitate his business and pay his creditors became futile. From the proximity between the two June 21, 2004, transfers and the lawsuit filed two months later which resulted in a $95,082.34 judgment against him, it is reasonable to infer that he was at the least aware of the impending financial problems at that point. And since everything became worse from there, culminating in his filing bankruptcy three years later, the in between time being populated by lawsuits, repossessions, foreclosures, and collection letters, it can also be readily inferred that Mr. Gardner's financial problems were extremely bad when he made the transfers in question.

### IV.  Conclusion

The trustee proved that the five transfers described above are voidable pursuant to Code of Ala. 1975, § 8-9A-4(a). Therefore, he is entitled to have those transfers set aside pursuant to Code of Ala. 1975, § 8-9A-7(a)(1) to the extent necessary to satisfy the unsecured claims filed by creditors in this case. That is precisely the remedy sought by the trustee with respect to all of the transfers other than the one involving the

10

"Highland Lakes" property since it was subsequently sold by Mrs. Gardner to a good faith purchasers for $43,500. Since Mrs. Gardner owned a half interest in the property prior to receiving the other half interest from Mr. Gardner, the trustee seeks a judgment against her for $21,750 which represents such portion of those sales proceeds that can fairly be attributable to Mr. Gardner's half interest. While that is not the proper measure of a judgment awardable pursuant to Code of Ala. 1975, § 8-9A-8(b), the sales price obtained by Mrs. Gardner on March 6, 2006, is relevant to a determination of what the value of the property was some twenty months earlier. And since that is the only evidence on the subject, the Court concludes that the value of Mr. Gardner's ½ interest in the "Highlands Lake" property on June 21, 2004, was $21,750 and will accordingly issue a judgment in that amount against Mrs. Gardner.

The "Simmons Road" property has a mortgage lien on it which secures the $60,000 loan taken out by Mrs. Gardner and Joseph Gardner. While the transfer by Mr. Gardner of his ½ interest in that property to Mrs. Gardner on June 21, 2004, may still be avoided, the mortgagee will retain its interest in the property in accordance with Code of Ala. 1975, § 8-9A-8(d).

Because the issues involved herein have been disposed of pursuant to the cause of action alleged in the trustee's complaint under Code of Ala. 1975, § 8-9A-4(a), it is unnecessary to decide whether the transfers in question are also avoidable under any other provisions of Alabama law or for any other reasons. Consequently, the allegations contained in the trustee's complaint asserting causes of action under Code of Ala. 1975, §§ 8-9A-4(c), 8-9A-5(a), and 8-9A-5(b) are moot.

A separate order will be entered in accordance with this memorandum opinion.

Dated: September 28, 2012          /s/Benjamin Cohen_____
                                   BENJAMIN COHEN
                                   United States Bankruptcy Judge


BC:sm

Case 09-00122-BGC    Doc 80    Filed 09/28/12    Entered 09/28/12 13:20:09    Desc Main
Document      Page 11 of 11